IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAMARK, LLC, | ) |
| Plaintiff, | ) CIVIL ACTION NUMBER: 22-CV-172-JAR |
| v. | ) STATE COURT CASE NO. CJ-2022-8 |
| REPUBLIC SERVICES, INC. et al., | ) CLASS ACTION |
| Defendants. | ) |

## NOTICE OF REMOVAL

Under 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Allied Waste Systems, Inc. ("Allied Waste") and Defendant Republic Services, Inc. ("RSI") remove this action from the District Court of Pushmataha County, Oklahoma, Judicial District 17, to the United States District Court for the Eastern District of Oklahoma. This putative class action is removable because the aggregate amount in controversy exceeds $5,000,000, there are at least one hundred putative class members, and there is minimal diversity between the parties. *See* 28 U.S.C. § 1332(d).

## BACKGROUND

1. Plaintiff Lamark, LLC's ("Lamark") Class Action Complaint alleges that Defendants wrongfully adjusted rates under a Customer Service Agreement wherein Allied Waste agreed to provide waste-hauling services for Lamark in exchange for Lamark paying an agreed-upon rate. *See* Compl. ¶¶ 3-5. Lamark asserts that Defendants violated Lamark's Customer Service Agreement by charging rates higher than the rates listed in the customer service agreement. *Id.* ¶¶ 25, 29, 39, and 59.

2. Based on these allegations, Lamark asserts both individual claims and claims on behalf of a putative classes:

> [a]ll entities and persons who reside in Oklahoma who entered into a written contract with Republic that provides "Company may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in… the Consumer Price Index for all Urban Consumers (Water, Sewer and Trash Collection Services), U.S. City Average. . ." and who paid rates to Republic in excess of those listed in the written contract from January 1, 2020 to June 30, 2021.

*Id.* at ¶ 39.

3. Lamark asserts two claims individually and on behalf of the class. The first claim is for breach of contract (*id.* at ¶¶ 50–54) and the second is for unjust enrichment (*id.* at ¶¶ 55–58).

4. Lamark seeks "damages in the amount of the excessive amount paid to Republic during the class period by putative class members (i.e., the amount paid through increases during the class period for customers who entered into the specific form contract at issue)." *Id.* ¶ 59. It states that "*[a]t this time*" it "does not seek attorney's fees, punitive damages, or injunctive relief." *Id.* (emphasis added).

5. Lamark makes no allegation specifying the amount in controversy.

6. RSI was served with the summons and Class Action Complaint by certified mail on May 9, 2022. Copies of all pleadings, processes, and orders in the state court action that have been served upon the Defendants as well as a docket sheet are attached hereto as **Exhibit A**. Both Defendants join in this removal.

## GROUNDS FOR REMOVAL

**I.  The Court has jurisdiction over this putative class action under 28 U.S.C. § 1332(d).**

7. Under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), federal courts have jurisdiction over any putative class action in which (1) the aggregate amount placed in controversy by the plaintiff and the proposed class members exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the putative class consists of at least 100 proposed

class members; and (3) the citizenship of at least one putative class member is different from that of at least one of the defendants—*i.e.*, in which there is minimal diversity. 28 U.S.C. § 1332(d). *See also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) ("CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million."); *Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1126 (10th Cir. 2017) ("In general, CAFA permits a class action to be brought in or removed to federal court if the proposed classes include at least 100 persons with claims, the aggregate amount in controversy on all claims exceeds $5 million, at least one proposed plaintiff and one defendant have diverse citizenship, and the primary defendants are not governmental entities or officials against whom a federal court cannot order relief."). All three requirements are met in this case.

A.     **More than $5 million is in controversy.**

8.     Lamark's allegations place in controversy an amount well above the jurisdictional minimum. A court may rely on a plaintiff's allegations in determining whether the amount-in-controversy requirement has been met. *See, e.g., St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("the sum claimed by the plaintiff controls if the claim is apparently made in good faith");; *see also, e.g., Scott v. Cricket Comms., LLC*, 865 F.3d 189, 194 (4th Cir. 2017); *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 581 (7th Cir. 2017); *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 502–07 (3d Cir. 2014); *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). Thus, a plaintiff's good-faith damages and relief claims are to be considered the "amount in controversy" for jurisdictional purposes. *See, e.g., St. Paul Mercury Indemnity Co.*, 303 U.S. at 288. Satisfying the amount-in-controversy requirement "doesn't depend on how much the plaintiff is likely to recover but on the amount the plaintiff's allegations

3

suggest she might lawfully recover." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 914 (10th Cir. 2016).[1]

9. The class Lamark seeks to represent places in controversy more than $5 million because they include "[a]ll entities and persons who reside in Oklahoma" who, from January 1, 2020 to June 30, 2021, paid rates to Republic that were higher than the rate listed in the customer's written contract, provided the contract had certain language regarding rate increases. Compl. ¶ 39.

10. Based on the available business records containing information about rate increases and fees paid by Allied Waste's customers in Oklahoma, Defendants calculate that the amount of price increases paid by its customers from January 1, 2020 through June 30, 2021 is at least $5,300,00.00. *See* **Exhibit B**, at ¶ 5. This amount exceeds the jurisdictional minimum of $5 million.

11. This amount of damages includes all amounts paid through rate increases for customers operating under written contracts as best as Defendants can determine. Defendants use "the amount paid through [rate] increases" because that language comes directly from Lamark's prayer for relief. Compl. at ¶ 59. The class definition further supports including all the increases in the amount in controversy, because the definition does not distinguish between types of rate increases. Instead, it includes, in relevant part, everyone "who paid rates to Republic in excess of those originally listed in the written contract…" *Id.* at ¶ 39. Lamark "challenges the rate increases

---

[1] Defendants are basing the allegations of the amount in controversy on currently available information and Lamark's allegations, and in no way do Defendants concede any wrongdoing or concede that Lamark is entitled to any damages. Defendants reserve their rights to challenge any amount of damages awarded. "Even when defendants have persuaded a Court upon CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. That is so because they are not stipulating to the amount of damages suffered but only estimating the amount of damages in controversy." *LaCross v. Knight Transportation, Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015).

implemented in order to adjust for increases in CPI"—*Id.* at ¶ 37—as well as those increases that are not tied to increases in the CPI. *See id.* at ¶¶ 25–29 (discussing rate increases in excess of or beyond amounts required by increases in the CPI).

12. The true amount in controversy is much, much higher. Lamark tries to cabin its class period so as to reduce artificially the amount in controversy and avoid federal jurisdiction, but such tactics are ineffective. As the Tenth Circuit held in reversing a CAFA remand "a plaintiff's attempt to limit damages in the complaint is not dispositive when determining the amount in controversy." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012). The United States Supreme Court has held that even a stipulation in the complaint that the plaintiff and class will not seek to recover more than $5 million must be disregarded in determining the amount in controversy because the stipulation does not bind the class. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013). After all, "another class member could intervene with an amended complaint (without a stipulation), and the District Court might permit the action to proceed with a new representative." *Id.* at 594.

13. It is obvious that Lamark is attempting to artificially reduce the amount in controversy to avoid federal jurisdiction for two reasons. First, Lamark's truncated class period does not correspond to the conduct that it alleges. It has been a customer since June 28, 2018. Compl. at ¶ 30. It alleges that every price increase it has received violates its rights. *Id.* at ¶ 10. And it alleges that the conduct is continuing. *Id.* at ¶¶ 26, 29. Nevertheless, Lamark arbitrarily selected January 1, 2020 as a start date and June 30, 2021 as the end date for its claim. Those dates correspond to no relevant event or time period at issue in the case. Instead, the selected time period is an attempt to limit the amount in controversy—something Congress and the Courts of Appeal

view with suspicion.[2] While the class definition limits membership in the class to those customers who received a rate increase during an 18-month period, Lamark seeks to assert breach of contract claims and unjust enrichment claims on behalf of those customers—claims that carry a four-year statute of limitations. A class member (including the currently-named class representative) may decide to attempt to seek an expanded class period that corresponds to the statute of limitations and runs to the present. If the class period were to run from June of 2018 (when Lamark became a customer of Allied Waste) to the present, the amount in controversy would be higher than the $5.3 currently in controversy. **Exhibit B** at ¶ 5. Further, because rate increases continue, the cumulative amount of rate increases paid increases each month. *Id.* at ¶ 6.

14. Second, and even more telling, counsel representing Lamark have filed several other similar cases against subsidiaries of RSI and RSI itself, and many of those cases have expanded class definitions. Consider the putative nationwide class action filed April 16, 2022 in the United States District Court for the District of South Carolina (the "South Carolina Class Action"). That case, which is brought by some of the same lawyers appearing here and is virtually identical in its relevant factual allegations, defines its various classes as people who paid certain rates and fees "within the applicable statute of limitations." **Exhibit C**, South Carolina Complaint,

---

[2] *Cf.* 28 U.S.C. § 1332(d)(3)(C) (listing "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction" as a factor courts consider in determining whether to exercise CAFA jurisdiction); *Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1132 (10th Cir. 2017) ("The Senate Report on CAFA says that if the plaintiff 'proposed a "natural" class—a class that encompasses all of the people and claims that one would expect to include in a class action,' or, in other words, if the 'class definition and claims appear to follow a "natural" pattern,' this factor would weigh in favor of the federal court's remanding the complaint to be handled by the state court.") (quoting S. Rep. No. 109-14, at 37); *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 409 (6th Cir. 2008) (aggregating five complaints worded nearly identically but seeking relief for discrete time periods, each with damages just below CAFA's threshold amount, "where there [was] no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA").

at ¶ 53. *See also* **Exhibit D**, Bryce Brewer Complaint, at ¶ 45 (defining class period as running from June 1, 2020 to the present).

15.   The potential for punitive damages also potentially increases the amount in controversy here. The Court may consider punitive damages in determining the amount in controversy for purposes of a CAFA removal, and may consider "facts alleged in the complaint, the nature of the claims, or evidence in the record to demonstrate that an award of punitive damages is possible." *Frederick*, 683 F.3d at 1247–48.

16.   Lamark asserts allegations that suggest it may eventually put punitive damages in controversy, even though it alleges that it does not seek punitive damages "[a]t this time," Compl. at ¶ 59. In fact, that statement merely emphasizes that Lamark believes that its allegations justify punitive damages. And Lamark alleges facts that strongly suggest its intent to allege a future claim that could serve as the basis for punitive damages. For example, "Republic knows when it enters into an agreement with a customer that they customer will pay substantially more than the agreed upon service rate through rate increases that are entirely unfair, deceptive and/or misleading." *Id.* at ¶ 32. Further, Lamark "alleges on behalf of itself fraud based on Republic's conduct." Compl. At ¶6.

17.   Similarly, the possibility of attorneys' fees increases the amount in controversy still further. As Lamark notes, the contracts at issue contain fee shifting provisions for the prevailing party. Compl. at ¶ 38. *See also* **Exhibit E**, Customer Service Agreement with Lamark, at 3 ("In any litigation commenced under this Agreement, the successful party shall be entitled to recover… its reasonable attorneys' fees, expert witness fees, litigation-related expenses, and court or other costs incurring in such litigation or proceeding."). Statutory or contractual rights to receive attorneys' fees count for purposes of calculating the amount in controversy. *See Missouri State*

*Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Galvez Blancas v. State Farm Mut. Auto. Ins. Co.*, No. 20-1283 KG/LF, 2021 WL 2589119 at *4 (D.N.M. June 24, 2021) ("Attorneys' fees may be included in the amount in controversy for purposes of satisfying the jurisdictional requirement where such fees are provided by statute or contract.") (quoting *Taylor v. O'Connor*, 2011 WL 13289687 at *2 (D.N.M Feb. 10, 2011)). "The Supreme Court has long held that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998).

18.     Reasonable estimates of fees are available from several sources. A factually similar class action involving disputed fees in connection with a provider of waste services was settled in Alabama. The settlement made $2.99 million available to the class and the lawyers were entitled to receive "one third (1/3) of the total value of the class recovery"—or approximately $1 million in that case. **Exhibit F,** Bach Settlement, at ¶ 18, p. 7. A similar class action against a different waste-hauling company produced a $15 million settlement, and the lawyers against received one third of that amount. **Exhibit G**, Veolia Fee Class Action, at 1. Using these fee petitions as guides, one third of the total amount in controversy is a reasonable estimate of fees.

19.     Therefore one third of the total damages amount can thus be counted as part of the amount in controversy, putting an additional $1.7 million in controversy.

20.     Again, the South Carolina Class Action shows that similar cases brought by overlapping groups of lawyers assert claims for attorneys' fees: instead of pleading narrow damages "at this time," that case brought by the same lawyers against the same defendants on substantially similar facts, "demand[s] all remedies and damages available…" including attorneys' fees and all species of damages. **Exhibit C** at ¶ 150.

21.     The required standard of proof is low. Defendants must establish only that items such as an expanded class damages period, punitive damages, or an award of attorneys' fees are *possible*—as the Tenth Circuit ruled, it is error to focus on the "factually probable" instead of the "legally possible." *Hammond*, 844 F.3d at 912 (emphasis omitted) (vacating remand order). Unless an expanded class definition is impossible, unless punitive damages could never be awarded, unless attorneys' fees are conclusively off the table, they count towards the amount in controversy. *St. Paul Mercury Indem. Co.*, 303 U.S. at 289 ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

**B.     The putative classes each contain more than 100 proposed class members.**

22.     Under CAFA's numerosity requirement, the putative class must consist of more than one hundred class members. 28 U.S.C. § 1332(d)(5)(B). The putative class meets that requirement.

23.     Lamark affirmatively alleges that its putative class contains more than 100 members by asserting that there are "hundreds of customers in Oklahoma who entered in the form contract and paid the rate increases." Compl. at ¶ 46 (discussing numerosity of the class). Elsewhere, Lamark alleges that a single trial in this matter will involve "the rights of thousands of small businesses." *Id.* at ¶ 6.

**C.     There is minimal diversity among the parties.**

24.     Under CAFA, minimal diversity is met when any member of the putative class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). If any class member is diverse from any defendant, minimal diversity is met.

25.     Lamark it is an Oklahoma entity with its principal place of business in Snow, Oklahoma. Compl. ¶ 9. Lamark is thus a citizen of Oklahoma under CAFA. 28 U.S.C.

§ 1332(d)(10). Lamark "is a small business in Pushmataha County, Oklahoma." *Id.* at ¶ 19. Moreover, the registered agent for Lamark is Marylee Grasso, and she is apparently the sole member of Lamark. She signed Lamark's customer service agreement with Allied Waste and designated herself as Lamark's singular "owner." **Exhibit E** at 1. Publicly available records show that she has resided in Oklahoma for years and continues to work there. For example, a person of that name in Snow, Oklahoma holds an active Oklahoma CPA license and has since 2007. A person by that same name (and using the same address as Lamark's waste hauling contract) in Snow, Oklahoma received a PPP loan for a different business. No facts indicate a connection with a state other than Oklahoma, and there is no basis at all to connect Lamark with Delaware or Arizona—the only two states that could destroy diversity.

26.     In addition, the proposed classes are comprised solely of Oklahoma residents—both "entities and persons." Compl. at ¶ 39. Such persons and entities must have entered into a contract to receive waste hauling services at an address in Oklahoma, a strong indicator of Oklahoma citizenship (in the case of entities) and Oklahoma domicile (in the case of persons). *See Middleton v. Stephenson*, 749 F.3d 1197, 1201 (10th Cir. 2014) (noting that determining domicile is "an all-things-considered approach, and any number of factors might shed light on the subject in a given case").

27.     Republic Services, Inc., and Allied Waste are each Delaware entities with their principal places of business in Arizona. *Id.* at ¶ 11.

28.     Accordingly, there is at least one Oklahoma citizen among Lamark and the proposed class members, and no Defendant is a citizen of Oklahoma. Minimal diversity between the parties exists.

## II.  All procedural requirements for removal have been satisfied.

29.  Defendants have satisfied all procedural requirements of 28 U.S.C. §§ 1446 and 1453 and thereby remove this action to the United States District Court for the Eastern District of Oklahoma.

30.  **Removal Is Timely.**  Under 28 U.S.C. § 1446(b)(2)(B), "[e]ach defendant shall have 30 days after receipt . . . of the initial pleading . . . to file the notice of removal."  Allied Waste was served with the summons and Class Action Complaint by certified mail on May 9, 2022.  Thus, this Notice is timely filed.

31.  **Removal is to the Proper Court.**  This action is properly removed to the United States District Court for the Eastern District of Oklahoma, which "embrac[es] the place where such action is pending": Pushmataha County, Oklahoma.  28 U.S.C. §§ 83(a)(1) and 1441(a).

32.  **Signature.**  This Notice of Removal is signed under Fed. R. Civ. P. 11.  *See* 28 U.S.C. § 1446(a).

33.  **Pleadings and Process.**  As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendants are attached hereto as **Exhibit A**.

34.  **Notice.**  As required by 28 U.S.C. § 1446(d), Defendants will promptly file a Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, with the clerk of the District Court of Pushmataha County, Oklahoma.

35.  If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to submit a brief and evidence and present oral argument in support of their position.  *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 82 (2014).  Defendants believe that no discovery is necessary but reserve the right to conduct discovery in the event it is allowed.

WHEREFORE, Defendants Republic Services, Inc., and Allied Waste Systems, Inc. hereby remove this action to the Court as if it were originally commenced in this Court.

Dated: June 7, 2022

Respectfully submitted,

/s/ Andrew B. Johnson
Andrew B. Johnson
OK. Bar No. 22370
ajohnson@bradley.com
*Attorney for Allied Waste Systems, Inc. and Republic Services, Inc.*
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue N.
Birmingham, AL 35203
Telephone: (205) 521-6295

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of June, 2022, I filed the foregoing with the Clerk of Court and served a true and correct copy of the same on the following counsel via U.S. Mail:

James T. Branam
115 W. Main Street
Antlers, OK 74253
jtbranam@hotmail.com

Oscar M. Price, IV
Nicholas W. Armstrong
PRICE ARMSTRONG, LLC
1919 Cahaba Road
Birmingham, AL 35223
oscar@pricearmstrong.com
nick@pricearmstrong.com

*Attorneys for Plaintiff*

                                              s/ Andrew B. Johnson
                                              Andrew B. Johnson
                                              OK. Bar No. 22370
                                              ajohnson@bradley.com
                                              *Attorney for Allied Waste Systems, Inc. and Republic Services, Inc.*
                                              BRADLEY ARANT BOULT CUMMINGS LLP
                                              1819 Fifth Avenue N.
                                              Birmingham, AL 35203
                                              Telephone: (205) 521-6295